AMCAST INDUSTRIAL CORPORATION
and Elkhart Products Corporation,
Plaintiffs–Appellees,

v.

DETREX CORPORATION,
Defendant–Appellant.

No. 92–2365.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1993.

Decided Aug. 12, 1993.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, D. Jeffrey Ireland, Ann Wightman, Mary L. Wiseman, Faruki, Gilliam & Ireland, Dayton, OH, for plaintiffs-appellees.

Arthur G. Surgine, Jr., James J. Shea, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, IN, Paul S. Koczkur, Bradley S. Mitseff, Harvey, Kruse, Westen & Milan, Troy, MI, John Gerald Gleeson, Howard & Howard, Bloomfield Hills, MI, for defendant-appellant.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

This appeal requires us to explore the outer limits of the "Superfund" statute—the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 *et seq.* We must decide whether, as the district court concluded, the Act extends to any chemical spill that creates an environmental hazard. 779 F.Supp. 1519. This is an important question that has not until now been the subject of an appellate case. Our conclusion is that the spiller, but not the shipper of the chemical that spilled, is within the Act's long reach.

The facts are simple enough, and we shall make them even simpler where we can do so without affecting the analysis. The principal plaintiff, Elkhart (Amcast is its parent, and can be ignored), manufactures copper fittings at a plant in Indiana. One of the chemicals that it uses in the manufacturing process is the solvent trichloroethylene (TCE). Elkhart used to buy TCE in liquid form from a number of chemical manufacturers, including the defendant, Detrex. Detrex sometimes delivered the solvent in its own tanker trucks and sometimes hired a common carrier,

Transport Services, to deliver it. In 1984, TCE was discovered in the groundwater beneath a pharmaceutical plant adjacent to Elkhart's plant. There is evidence that both Detrex's and Transport Services' drivers sometimes spilled TCE accidentally on Elkhart's premises while trying to fill Elkhart's storage tanks and that some of this spillage found its way into the groundwater beneath the pharmaceutical plant, although an expert hired by Detrex has estimated that out of almost 800 gallons of TCE that have been found in the soil and groundwater beneath the pharmaceutical plant, no more than 49 came from these delivery spills, the rest having leaked from the storage tanks or a waste-disposal pit or the plant itself or been spilled by other suppliers' drivers.

The Superfund statute, so far as bears on this case, imposes liability for "response costs" (the costs of eliminating an environmental hazard) on the "owner and operator of a ... facility" from which a hazardous substance has been released, § 9607(a)(1), and on "any person who by contract ... arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person." § 9607(a)(3). "Facility" is broadly defined as "(A) any building, structure, installation, equipment, pipe or pipeline ..., well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." § 9601(9). Elkhart is admittedly a "responsible person," as an entity liable for response costs is called; but the statute permits one responsible person to recover all or part of its response costs from another. § 9607(a)(4)(B). Having spent more than $1 million on cleaning up the contamination caused by the spillage of TCE from its facility, Elkhart brought this suit to establish that Detrex was a responsible person, too, and to shift Elkhart's response costs (that is, the $1 million it had incurred in cleaning up the contamination) from itself to Detrex.

A potentially responsible person who, like Detrex, has been sued is entitled to seek, by way of counterclaim, contribution from the plaintiff for the amount of response costs fairly attributable to the conduct of the plaintiff as distinct from that of the defendant. § 9613(f). Rather than file a counterclaim against Elkhart, Detrex argued to the district judge that in the course of adjudicating Elkhart's claim he had to apportion responsibility for the costs between the parties. The judge rejected this argument, together with Detrex's more fundamental argument that it is not a responsible person within the meaning of the statute, and entered judgment in favor of Elkhart for the entire response costs that Elkhart had incurred. 822 F.Supp. 545. Eventually Detrex filed a separate action for contribution from Elkhart; that suit is pending in the district court. § 9613(f)(1); *United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 571 n. 2 (6th Cir.1991). Detrex was entitled to proceed in that fashion. The statute is explicit that a counterclaim for response costs is not compulsory, §§ 9613(f)(1), (g)(3)(A), a result consistent with general law, since Detrex's claim against Elkhart, dependent as it was on Elkhart's establishing Detrex's liability to it, had not matured when Elkhart's suit was filed. Fed.R.Civ.P. 13(a); *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 360 (7th Cir.1990); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1411 at p. 83 (2d ed. 1990).

The argument that the judge had to apportion liability between Detrex and Elkhart in Elkhart's suit makes no sense, so we dispatch it at the outset. The statute is clear that whoever (like Elkhart) incurs costs in cleaning up a contaminated site can seek to recover them from any responsible person, and if the responsible person believes as Detrex does that his contribution to the mess was trivial and wants the point established promptly he can counterclaim for as large a percentage of the costs as he thinks he can prove was due to the plaintiff's own conduct. *United States v. R.W. Meyer, Inc., supra*, 932 F.2d at 571 n. 2; *United States v. Mexico Feed & Seed Co.*, 764 F.Supp. 565, 573 (E.D.Mo.1991), rev'd in part on other grounds, 980 F.2d 478 (8th Cir.1992). The

counterclaim if promptly filed will doubtless be tried at the same time as the main claim, so the defendant will at no time be out of pocket by more than the share of the response costs attributable to his own conduct. Obviously Detrex could have counterclaimed without giving up its main argument—that it is not a responsible person and therefore is not liable for any part of the response costs. We do not know why it waited and filed a separate suit.

■ The difficult question is whether Detrex is within the grasp of the Superfund law at all; if not, Elkhart's suit must fail irrespective of any division of responsibilities between Elkhart and Detrex. Elkhart argues that Detrex has forfeited this ground of appeal by failing to present it to the district court. Detrex had argued to the district court on a variety of grounds that it was not liable to the plaintiff under that law, and one of these grounds was that it was not an arranger for disposal or treatment. The fact that it did not marshal in support of this ground all the relevant legislative provisions and history did not work a forfeiture. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 n. * (7th Cir.1992); *Locke v. Bonello*, 965 F.2d 534, 536 n. 1 (7th Cir.1992); cf. *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); but see *Elder v. Holloway*, 975 F.2d 1388, 1392–93 (1991), rehearing en banc denied, 984 F.2d 991 (9th Cir.1993) (per curiam), cert. granted, — U.S. —, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993). But Detrex tacitly conceded in the district court that it was, though not an arranger for disposal, an owner of a facility, within the meaning of the statute. Detrex thus conceded a ground that it now seeks to raise with us, that it was not an owner of a facility; and failure to have presented to the district court a ground on which reversal is being urged is a more serious matter than failing to support a ground with the arguments or authorities that the appellate court finds persuasive. The rule in civil cases is that except with regard to jurisdictional issues and issues involving comity—the mutual respect owed by sovereigns and quasi-sovereigns, such as the states—a ground not raised in the district court cannot be used to reverse that court,

*Old Republic Ins. Co. v. Federal Crop Ins. Corp.*, 947 F.2d 269, 276–77 (7th Cir.1991); *Zbaraz v. Hartigan*, 763 F.2d 1532, 1544 (7th Cir.1985), aff'd by an equally divided Court under the name *Hartigan v. Zbaraz*, 484 U.S. 171, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987). The Supreme Court has told us, however, that the rule is not absolute, *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); see also *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77, 111 S.Ct. 415, 418, 112 L.Ed.2d 374 (1990); *id.* at 86, 111 S.Ct. at 422 (concurring opinion); *U.S. National Bank v. Independent Insurance Agents of America, Inc.*, — U.S. —, — — —, 113 S.Ct. 2173, 2178–79, 124 L.Ed.2d 402 (1993), a point upon which we have built in carving an exception for plain errors in civil cases. (The civil rules contain no counterpart to Rule 52(a) of the criminal rules, which allows reversal on the basis of plain errors even if they had not been drawn to the attention of the trial court.) *Deppe v. Tripp*, 863 F.2d 1356, 1362 (7th Cir.1988). Occasional flat statements in our cases that there is no plain error doctrine in civil cases, e.g., *United States v. Caputo*, 978 F.2d 972, 974 (7th Cir.1992), which puzzled the court in *Hudak v. Jepsen of Illinois*, 982 F.2d 249, 251 n. 1 (7th Cir.1992), implicitly refer to error *in jury instructions*, a setting to which Rule 51 of the civil rules has been interpreted to make the doctrine of plain error inapplicable. *Deppe v. Tripp, supra*, 863 F.2d at 1361–62.

■ Forfeiture is a sanction, and sanctions should be related to harm done or threatened. In the rare case in which failure to present a ground to the district court has caused no one—not the district judge, not us, not the appellee—any harm of which the law ought to take note, we have the power and the right to permit it to be raised for the first time to us. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1306 n. 7 (7th Cir.1988); *Charlton v. United States*, 743 F.2d 557, 561 n. 5 (7th Cir.1984) (per curiam). This is a suitable case in which to exercise our power of lenity. The new ground is fully argued in the brief of the appellant, so that Elkhart had—and it took—a full opportunity to respond. The ground rests entirely on a pure issue of

statutory interpretation, as to which the district judge's view, while it would no doubt be interesting, could have no effect on our review, which is plenary on matters of law. It is unrealistic to think that if Detrex had made the argument to the district court and prevailed, there would have been no appeal. The appeal just would have been filed by Elkhart rather than by Detrex. The issue having been fully briefed and argued, there is no reason to defer its resolution to another case. There will be no better time to resolve the issue than now.

■ Each of the tanker trucks owned by Detrex in which it delivered TCE to Elkhart constituted prima facie a "facility" within the meaning of the Superfund law, § 9601(9)(A), contained a hazardous substance, namely TCE, and "disposed of" it when the truck spilled it, because the statute defines disposal to include spilling. §§ 6903(3), 9601(29). The statutory definition of facility excludes, however, a "consumer product in consumer use." § 9601(9). Neither party suggests that the term "consumer product" is limited to products used by consumers as distinct from ones consumed by business firms and other institutions. *Dayton Independent School District v. U.S. Mineral Products Co.,* 906 F.2d 1059, 1065–66 (5th Cir.1990), holds, correctly in our view, that asbestos products incorporated into walls and ceilings of school buildings are consumer products within the meaning of the Superfund law. The difficult question is whether the reference to consumer product in section 9601(9), the definition of "facility," is to be read literally.

If it is read literally, the only consumer product exempted by the statute is the consumer product that is a facility. The alternative is to read the exemption as referring to facilities that *contain* consumer products. Under this alternative reading, as long as Elkhart was using TCE in its plant in the ordinary course, with no spills or leaks, it was not the owner of a "facility" within the meaning of the statute. The *Dayton* decision even suggests that the school buildings themselves might have been consumer products within the meaning of the statute, 906 F.2d at 1065 n. 4, and likewise Elkhart's plant, so long as it was merely manufacturing useful products and not creating hazardous wastes. That, however, would be an extraordinarily strained reading of "consumer product."

Once Elkhart finished using the TCE in its manufacturing process—once consumer use passed over into waste disposal, as happened when Elkhart dumped the used TCE into a waste-disposal pit on its premises—Elkhart became, if the statutory reference to a facility that is a consumer product is interpreted to mean a facility that contains a consumer product, a responsible person, as a facility owner no longer sheltered by the exception for consumer products in consumer use. Continuing with this interpretation of the consumer-product exception, and assuming reasonably enough that the transportation of a consumer product to the customer is as much a consumer use as the consumption of the product in the customer's manufacturing process (the trucks themselves might be thought consumer products, within the extended meaning attached to this term in the *Dayton* footnote, but we reject so strained an interpretation of the term), we would conclude that until the TCE transported in Detrex's trucks spilled, it was a consumer product in consumer use. It ceased to be in consumer use when it spilled; but the spilled TCE was no longer in the trucks or any other property owned by Detrex, and when it hit the ground it was in premises owned by Elkhart, and Elkhart thus became the facility owner and a responsible person.

This approach does excessive violence to the statutory language. The exception is for facilities that *are* consumer products in consumer use, not for consumer products contained in facilities. Although read as it is written the exception is narrow, it is not meaningless, for the statute defines "facility" so broadly that it could be thought to include a can of lye. Since Detrex, not Elkhart, was responsible for the environmental damage resulting from the spillage of TCE from Detrex's trucks, there is no anomaly, so far as the purpose of the Superfund statute is concerned, in deeming Detrex a responsible person along with Elkhart. A literal interpretation that furthers the statute's purpose is hard to beat.

Irrespective of the issue of consumer product and consumer use, however, Detrex was a responsible person with respect to the TCE that was spilled by trucks owned by Transport Services only if by hiring Transport Services to carry the stuff to the Elkhart plant Detrex "arranged with a transporter for transport for disposal or treatment" of TCE. § 9607(a)(3). Detrex hired a transporter, all right, but it did not hire it to spill TCE on Elkhart's premises. Although the statute defines disposal to include spilling, the critical words for present purposes are "arranged for." The words imply intentional action. The only thing that Detrex arranged for Transport Services to do was to deliver TCE to Elkhart's storage tanks. It did not arrange for spilling the stuff on the ground. No one arranges for an accident, except in the sinister sense, not involved here, of "staging" an accident—that is, causing deliberate harm but making it seem accidental.

Statutes sometimes use words in nonstandard senses, and do so without benefit of a definitional section. (The Superfund statute does not define "arrange for.") Elkhart argues that we can tell that Congress was doing that here because the provision in question speaks of "disposal" and we know that "disposal" includes accidentally spilling. But since context determines meaning, the same word can mean different things in different sentences—to monopolize a conversation doesn't mean the same thing as to monopolize the steel industry—even in the same statute, especially when the statute does not attempt to impose a single meaning by defining the word. In the context of the operator of a hazardous-waste dump, "disposal" includes accidental spillage; in the context of the shipper who is arranging for the transportation of a product, "disposal" excludes accidental spillage because you do not arrange for an accident except in the Æsopian sense illustrated by the staged accident.

The words "arranged with a transporter for transport for disposal or treatment" appear to contemplate a case in which a person or institution that wants to get rid of its hazardous wastes hires a transportation company to carry them to a disposal site. If the wastes spill en route, then since spillage is disposal and the shipper had arranged for disposal—though not in that form—the shipper is a responsible person and is therefore liable for clean-up costs. But when the shipper is not trying to arrange for the disposal of hazardous wastes, but is arranging for the delivery of a useful product, he is not a responsible person within the meaning of the statute and if a mishap occurs en route his liability is governed by other legal doctrines. It would be an extraordinary thing to make shippers strictly liable under the Superfund statute for the consequences of accidents to common carriers or other reputable transportation companies that the shippers had hired in good faith to ship their products. *Indiana Harbor Belt R.R. v. American Cyanamid Co.,* 916 F.2d 1174, 1180–81 (7th Cir.1990). The language of the statute permits but does not compel such a result, and we can find no evidence that it was intended.

This conclusion does not create a regulatory void. Apart from common law liability of transportation companies for chemical spills, noted in our *Indiana Harbor Belt R.R.* decision, there are a variety of direct regulatory controls over the transportation of hazardous substances, illustrated by the Hazardous Materials Transportation Act, 49 U.S.C.App. §§ 1801 *et seq.* And Elkhart was responsible for the cost of cleaning up the contamination resulting from the spillage from Transport Service's trucks if it couldn't find any other responsible persons to whom to shift that cost in whole or in part.

We conclude that Detrex was liable under the Superfund statute for the spillage from its own trucks (though it may be able to shift some of that liability back to Elkhart by means of its suit for contribution) but not the spillage from the trucks of the common carrier that it hired. The judgment for Elkhart is therefore affirmed in part and reversed in part and the case remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.