**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1155**

---

68TH STREET SITE WORK GROUP,

        Plaintiff – Appellant,

v.

ALBAN TRACTOR CO., INCORPORATED; C & I LEASING INCORPORATED; RUKERT TERMINALS CORPORATION; SOLO CUP COMPANY; VIACOMCBS INC.; VORNADO REALTY TRUST,

        Defendants – Appellees,

and

7-ELEVEN, INC.; A&M (2015) LLC; ABACUS CORPORATION; AIRGAS, INCORPORATED; ALLY FINANCIAL INCORPORATED; AMERICAN EXPRESS COMPANY; AMERICAN PREMIER UNDERWRITERS, INCORPORATED; AMERICAN SUGAR REFINING, INC.; AMTOTE INTERNATIONAL, INCORPORATED; APPLIED INDUSTRIAL TECHNOLOGIES, INC.; ARMACELL, LLC; ASARCO LLC; ASCENSION ST. AGNES HOSPITAL; AVIS RENT A CAR SYSTEM, LLC; BATESVILLE CASKET COMPANY, INCORPORATED; BELL AND HOWELL, LLC; BENJAMIN MOORE & CO.; BERWIND CORPORATION; BOB BELL AUTOMOTIVE GROUP, INC.; BOB DAVIDSON FORD, INC.; BRAND INDUSTRIAL SERVICES, INC.; BURT RIGID BOX, INC.; CAPLAN BROTHERS, INC.; CARAUSTAR INDUSTRIES, INC.; GREIF, INC.; CARISAM-SAMUEL MEISEL (MD), INC.; CERES MARINE TERMINALS, INC.; CHIQUITA BRANDS LLC; CITIFINANCIAL CREDIT COMPANY; CLARK EQUIPMENT COMPANY; CLOVERLAND DAIRY LIMITED PARTNERSHIP; COACH USA, INC.; COLDWELL BANKER REAL ESTATE LLC; COWAN SYSTEMS, INCORPORATED; CROWN CENTRAL LLC; CRW PARTS, INC.; DETROIT ROYALTY, INC.; DONOHOE REAL ESTATE SERVICES; DRUG CITY PHARMACY, LLC; EAGLE GROUP; EBY-BROWN COMPANY, LLC; ECLIPSE INTERNATIONAL, INC.; ELG METALS, INC.;

ENTERPRISE ELECTRIC COMPANY; FERGUSON ENTERPRISES, INCORPORATED; FIRST NATIONAL BANK OF PENNSYLVANIA; F.N.B. CORPORATION; FOOT LOCKER SPECIALTY, INC.; FROEHLING & ROBERTSON, INC.; FUCHS LUBRICANTS CO.; GENESCO, INC.; GIVAUDAN FLAVORS CORPORATION; UNILEVER UNITED STATES, INCORPORATED; GLEN-GERY CORPORATION; GRAUL'S MARKET, INC.; GRAYBAR ELECTRIC COMPANY, INC.; H&R BLOCK, INCORPORATED; HAMPSHIRE INDUSTRIES, INCORPORATED; HARLAND CLARKE CORP.; HERITAGE CHEVROLET-BUICK, INC.; HIGH'S OF BALTIMORE, LLC; NEW RIDGE ASSOCIATES, INC.; HILTON WORLDWIDE, INC.; HOHMANN & BARNARD, INC.; DAYTON SUPERIOR CORPORATION; HOST HOTELS & RESORTS, INC.; HMS HOST FAMILY RESTAURANTS, INC.; HSBC NORTH AMERICA HOLDINGS, INC.; ILLINOIS SLEEP PRODUCTS, INC.; INDUSTRIAL CONTAINER SERVICES, LLC; JERRY'S CHEVROLET, INC.; KEURIG DR. PEPPER INC.; KING DAVID AT AUTUMN LAKE, LLC; KMART CORPORATION; KOHLBERG, KRAVIS, ROBERTS & CO. L.P.; KOROS, LLC; LAIRD PLASTICS, INC.; LANE BRYANT, INC.; LEAR CORPORATION; LEBANON SEABOARD CORPORATION; LEGG MASON, INCORPORATED; LEN STOLER, INC.; LIFESTAR RESPONSE CORPORATION; LIFETOUCH NATIONAL SCHOOL STUDIOS, LLC; LIFOAM INDUSTRIES, LLC; LION BROTHERS COMPANY, INC.; LONG & FOSTER REAL ESTATE, INCORPORATED; M. WEINMAN COMPANY, INC.; MACDERMID, INC.; MARYLAND MANAGEMENT COMPANY; MASTER-HALCO, INC.; MAWSON AND MAWSON, INC.; MCCORMICK & COMPANY, INCORPORATED; MELIBELLE USA, INC.; MERCK SHARP & DOHME CORPORATION; MONDELEZ INTERNATIONAL, INC.; MORGAN PROPERTIES MANAGEMENT COMPANY, LLC; MOUNT VERNON MILLS, INC.; NATIONAL INSTITUTES OF HEALTH; NATIONWIDE AUTO SALES CORP.; NCR CORPORATION; NL INDUSTRIES, INCORPORATED; NORRIS AUTOMOTIVE HOLDINGS, LLC; PABST BREWING COMPANY; PACTIV, LLC; PENSKE LOGISTICS LLC; PENSKE TRUCK LEASING CO., L.P.; POLY-SEAL, LLC; POWERCON CORPORATION; PRINCE MINERALS, LLC; JOTUN PAINTS, INC.; PQ CORPORATION; PREMIER TECHNOLOGY, INC.; PVH CORPORATION; QUIKRETE HOLDINGS, INC.; RAYMOND JAMES & ASSOCIATES, INCORPORATED; RIDGEWAY MANOR, INC.; ROCA USA, INC.; ROPER CORPORATION; RUSSELL T. BUNDY ASSOCIATES, INC.; SCHMIDT BAKING COMPANY, INCORPORATED; SCHUMACHER & SEILER, INC.; SERVICE AMERICA CORPORATION; SHELL OIL COMPANY; SMYTH JEWELERS, INC.; ALBERT S. SMYTH CO., INC.; STATE FARM LIFE INSURANCE COMPANY; STELLA MARIS OPERATING CORP.; TEKTRONIX, INC.; TRANSAMERICA PREMIER LIFE INSURANCE COMPANY; TREEHOUSE PRIVATE BRANDS, INC.; TRI-STAR REALTY, LLP; TRUIST FINANCIAL CORPORATION; BUNGE NORTH AMERICA

2

(EAST), LLC; UNION CARBIDE CORPORATION; UNISYS CORPORATION; UNIVERSAL MUSIC GROUP, INC.; US FOODS, INC.; USF REDSTAR, LLC; VALLEY MOTORS, INC.; VIAD CORPORATION; VICTORY RACING PLATE COMPANY; VISUAL MARKING SYSTEMS, INC.; WELLS FARGO BANK NATIONAL ASSOCIATION; WHITING-TURNER CONTRACTING COMPANY; YRC WORLDWIDE, INC.; ZURICH AMERICAN INSURANCE COMPANY; AARON'S, INC.; BRINKS, INCORPORATED; SOLO CUP OPERATING CORPORATION; HOLLY POULTRY, INC.,

Defendants.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge.  (1:20-cv-03385-SAG)

---

Argued:  March 19, 2024                              Decided:  June 25, 2024

---

Before WYNN and BENJAMIN, Circuit Judges, and Joseph DAWSON III, United States District Judge for the District of South Carolina, sitting by designation.

---

Vacated and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Benjamin and Judge Dawson joined.

---

**ARGUED:** Gary Dean Justis, JUSTIS LAW FIRM LLC, Crested Butte, Colorado, for Appellant. Stephen E. Fitzgerald MORGAN, LEWIS & BOCKIUS LLP, Dallas, Texas; Colette Alison Woghiren, NEAL GERBER EISENBERG LLP, Chicago, Illinois, for Appellees. **ON BRIEF:** Sean Radomski, MORGAN, LEWIS & BOCKIUS LLP, Princeton, New Jersey, for Appellee C&I Leasing, Inc. William A. Baker, Daniel T. McKillop, SCARINCI HOLLENBECK, Little Falls, New Jersey, for Appellee Vornado Realty Trust. Mark A. Johnston, Jessica Ashley Glajch, Washington, D.C., David Andrew Rockman, ECKERT SEAMANS CHERIN & MELLOTT LLC, Pittsburgh, Pennsylvania, for Appellee ViacomCBS, Inc. Margaret M. Witherup, WITHERUP ALLEN LAW LLC, Burtonsville, Maryland, for Appellee The Rukert Terminals Corporation. Thomas K. Prevas, Greogry L. Waterworth, SAUL EWING LLP, Baltimore, Maryland, for Appellee Alban Tractor LLC. Lisa S. Zebovitz, NEAL GERBER EISENBERG LLP, Chicago, Illinois, for Appellee Solo Cup Operation Corporation.

3

WYNN, Circuit Judge:

This appeal presents the question of whether arranger liability under CERCLA (the Comprehensive Environmental Response, Compensation, and Liability Act; also known as the Superfund Act) requires knowledge that disposed-of waste is hazardous. The district court believed so, interpreting CERCLA as imposing liability on businesses that arrange for the disposal of waste only if the arrangers intended to dispose of waste *and knew that the disposed-of waste was hazardous*. But CERCLA provides no textual basis for the latter, knowledge-based requirement—and imposing such a requirement in cases like this one conflicts with CERCLA's broader statutory scheme.

Accordingly, we conclude that the district court erred by requiring Plaintiff—the 68th Street Site Work Group ("the 68th Street Group")—to allege scienter. We therefore vacate the relevant orders and remand for reconsideration of the 68th Street Group's Proposed Amended Complaint against the six arranger defendants-appellees ("the Appellees").

I.

A.

"Congress enacted CERCLA in 1980 to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014) (citation and internal quotation marks omitted); *see* 42 U.S.C. § 9607.

To achieve those goals, Congress "establish[ed] a strict liability scheme" for parties that it deemed to have contributed to the "release or threatened release" of hazardous

4

substances. *United States v. Monsanto Co.*, 858 F.2d 160, 167–68 (4th Cir. 1988). And because Congress intended the statute to serve a broad remedial purpose, it imposed that strict-liability framework retroactively—that is, without regard to whether a release or threatened release of hazardous substances was lawful prior to CERCLA or whether a defendant previously knew of a substance's hazardous nature. *See, e.g.*, *O'Neil v. Picillo*, 883 F.2d 176, 183 n.12 (1st Cir. 1989); *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 732–34 (8th Cir. 1986); *Monsanto*, 858 F.2d at 174 (agreeing with the "[m]any courts" that "have concluded that Congress intended CERCLA's liability provisions to apply retroactively to pre-enactment disposal activities of off-site waste generators").

Relevant here, CERCLA imposes liability on "any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person[.]" 42 U.S.C. § 9607(a)(3); *see id.* § 9601(21) (defining "person" to include an individual, business entity, or governmental entity). This is known as "arranger liability." *Burlington N. & Santa Fe Ry. Co. v. United States* (*Burlington Northern*), 556 U.S. 599, 607 (2009).

Often, multiple parties may be responsible for CERCLA cleanup costs. *E.g.*, *Monsanto*, 858 F.2d at 163–64. To encourage liable parties to settle and voluntarily initiate remediation efforts rather than drag out litigation related to determining liability, CERCLA permits a party who has settled its liability with the United States or an individual state to "seek contribution from any person" or entity that is liable for the same action but has not yet settled. 42 U.S.C. § 9613(f)(3)(B); *Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 657 (6th Cir. 2000) ("CERCLA's scheme of strict liability for responsible parties

5

in conjunction with the availability of contribution actions employing the same liability standard and contribution protection for parties who have settled with the government serves to encourage parties to clean up the site quickly and then litigate later to sort out the specifics of who should pay."). This case presents one such contribution action.

B.

The 68th Street Dump Superfund Alternative Site ("the Superfund Alternative Site") is an aggregate of seven landfills in Maryland that accepted a variety of waste for disposal, including "solid and liquid municipal, industrial and commercial wastes." J.A. 453.[1] That waste contained an array of hazardous substances, including heavy metals and pesticides.

Eventually, concern grew about risks posed by the hazardous waste that littered the Superfund Alternative Site, and the EPA (Environmental Protection Agency) began taking emergency actions to remediate contamination at the Superfund Alternative Site. As part of that process, the EPA informed various entities that they were "potentially responsible part[ies]" that may be liable for remediation efforts at the Superfund Alternative Site. J.A. 452, 455. A number of those entities ("the settling entities") entered administrative settlements with the EPA and eventually agreed to a consent decree with the EPA and the State of Maryland. The consent decree required the settling entities to undertake remediation efforts at the Superfund Alternative Site. Some of the settling entities ("the

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

performing entities") subsequently performed their duties under the administrative settlements and consent decree, incurring millions of dollars of cleanup costs in the process.

Seeking to recoup some of these costs, the performing entities formed the 68th Street Group and assigned their CERCLA contribution claims to it. The 68th Street Group then filed this action against 156 non-performing and non-settling entities. It sought contribution for past costs as well as a declaratory judgment that the defendants would be liable for contribution to any future costs.

Relevant here, the 68th Street Group alleged that each defendant incurred arranger liability by arranging for the disposal of waste at the Superfund Alternative Site. Most of the defendants settled and were voluntarily dismissed, but thirty-one defendants eventually filed either a motion to dismiss or both a motion to dismiss and a motion for summary judgment. *68th St. Site Work Grp. v. Airgas, Inc.*, No. CV SAG-20-3385, 2021 WL 4255030, at *1 (D. Md. Sept. 16, 2021).

In a single order addressing all the motions, the district court dismissed the claims against each of these thirty-one defendants.[2] *Id.* at *2, *28. The court concluded that, among other defects, the complaint failed to allege that the defendants took "intentional steps with the specific intent to dispose of *hazardous* waste and not just waste that, to [their] knowledge, may or may not contain hazardous substances." *Id.* at *21 (emphasis added).

---

[2] As to two of the defendants, the district court granted summary judgment rather than dismissal. *68th St.*, 2021 WL 4255030, at *17–18. That aspect of its decision is not at issue here.

Because the district court dismissed the claims without prejudice, *id.* at *23, *28, the 68th Street Group subsequently moved to amend its complaint against seven of the defendants, *68th St. Site Work Grp. v. 7-Eleven, Inc.*, No. CV SAG-20-3385, 2022 WL 227966, at *1 (D. Md. Jan. 26, 2022). Its Proposed Amended Complaint attempted to remedy some of the issues the district court had identified, but still did not allege scienter. *See id.* at *3 (noting that "none of the new allegations suggests anything about the Defendants' intent to dispose of hazardous substances"). Six of the defendants—the Appellees here—opposed the 68th Street Group's motion to amend on several grounds.[3]

Addressing only one of the arguments raised by the Appellees, the district court denied the motion to amend as futile on January 26, 2022. *Id.* at *3–4. Standing by its prior interpretation of CERCLA's arranger-liability provision, the court concluded that the 68th Street Group's failure to allege that the Appellees had knowledge that their waste was hazardous was fatal to the 68th Street Group's claims. *Id.* at *3.

The 68th Street Group then filed a motion to certify an interlocutory appeal, seeking to immediately challenge the district court's interpretation of CERCLA. After the district court denied that motion, the 68th Street Group declined to seek further leave to amend.

While the 68th Street Group's claims against most defendants had been dismissed by that point, three of the Appellees had filed answers and therefore could not file motions to dismiss. In March 2022, those three Appellees jointly moved for judgment on the

---

[3] According to the district court, the seventh defendant "consistently failed to respond to any filings in this case." *68th St.*, 2022 WL 227966, at *1 n.1.

8

pleadings. The district court granted the joint motion on May 10, 2022, again resting its decision solely on its interpretation of the CERCLA arranger-liability provision. *See 68th St. Site Work Grp. v. 7-Eleven, Inc.*, No. CV SAG-20-3385, 2022 WL 1470467 (D. Md. May 10, 2022).

On January 10, 2023, following another settlement, the district court entered its final order, which voluntarily dismissed the last remaining defendant. The 68th Street Group then filed this appeal, proceeding solely against the Appellees.

## II.

This appeal requires us to address the district court's interpretation of CERCLA's arranger-liability provision. Before we can reach that issue, however, we must assure ourselves that we have jurisdiction over this appeal. *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). We conclude that we do.

For us to exercise appellate jurisdiction, an appellant must file a timely notice of appeal that designates, *inter alia*, the order from which the appeal is taken. *See* Fed. R. App. P. 3(a)(1) (requirement to file notice of appeal), 3(c)(1) (content requirements), 4(a)(1)(A) (filing period); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988) (recognizing that these requirements are jurisdictional).

Here, the 68th Street Group filed its notice of appeal after the district court entered the January 10, 2023, order dismissing the last remaining defendant, and the notice of appeal identified that order as the basis for the appeal. Because the January 2023 order "end[ed] the litigation on the merits and le[ft] nothing for the court to do but execute the judgment," it is a "final decision" over which we can exercise appellate jurisdiction. *Ray*

9

*Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 183 (2014); *see* 28 U.S.C. § 1291.

But the wrinkle here is that the 68th Street Group's appeal actually pertains to two earlier orders: the January 26, 2022, order denying the motion for leave to amend, and the May 10, 2022, order granting the motion for judgment on the pleadings.[4] So, the question is whether the 68th Street Group's notice of appeal, identifying only the final (January 2023) order, confers appellate jurisdiction over the two earlier orders the 68th Street Group actually challenges. We conclude that it does.

Under the Federal Rules of Appellate Procedure, "[t]he notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal." Fed. R. App. P. 3(c)(4); *see* Fed. R. App. P. 3 advisory committee's note to 2021 amendment (stating that, by clarifying that a notice of appeal need not list all orders that merged into the final order to preserve issues for appeal, the amendment sought to prevent courts from "inadvertently creat[ing] a trap for the unwary"). "Since the 2021 amendment to Rule 3 that added the relevant language, there has been little case law interpreting which orders 'merge into' a later order[.]" *Wall Guy, Inc. v. F.D.I.C.*, 95 F.4th 862, 877 (4th Cir. 2024). And we have not previously addressed whether orders like those at issue here merge into a district court's final order for the purposes of appeal. But, according to the advisory

---

[4] While the district court also applied its interpretation of CERCLA in its order granting the various defendants' motions to dismiss, the 68th Street Group does not seek reversal of that order, and instead only requests leave to amend.

10

committee's notes, the "general merger rule" is that "an appeal from a final judgment permits review of all rulings that led up to the judgment." Fed. R. App. P. 3 advisory committee's note to 2021 amendment.

To be sure, "[b]ecause this general rule is subject to some exceptions and complications, the amendment does not attempt to codify the merger principle but instead leaves its details to case law." *Id.* Still, the default assumption under Rule 3 is that preliminary rulings that lead up to a final judgment merge into that final judgment and are designated for purposes of appeal by a notice of appeal that designates the final judgment. We see no reason this principle would not apply to the orders at issue in this case—an order denying leave to amend the complaint, and an order granting partial judgment on the pleadings.

> Rule 54(b) of the Federal Rules of Civil Procedure provides that
>
> when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b); *see also Hyan v. Hummer*, 825 F.3d 1043, 1046 (9th Cir. 2016) ("The order on appeal here dismissed two of the defendants named in [the] suit, but one defendant . . . remains in district court. Accordingly, the order is not a 'final decision' over which we may exercise jurisdiction." (footnotes omitted)).

In this case, the district court never made an express finding that its resolution of the claims against some of the parties qualified as a final judgment and instead only ever entered orders resolving claims against subsets of defendants. Indeed, by denying the 68th Street Group's motion to certify an interlocutory appeal, the district court expressly declined to qualify as a final judgment its order denying the motion for leave to amend.

Neither of the district court's two key orders were expressly designated as final, both orders merely led up to the final judgment, and no exception to the general merger rule applies to the orders, so the orders both merged into the order dismissing the last remaining defendant. And because the orders merged into the final order, the notice of appeal's reference to the final order satisfied the requirements for establishing appellate jurisdiction.

## III.

Having ensured that we may exercise jurisdiction over this appeal, we turn to the central issue: whether CERCLA arranger liability requires knowledge that disposed-of waste is hazardous.

To succeed on a CERCLA contribution claim, a plaintiff must establish: "(1) that it incurred costs as a person liable under [42 U.S.C.] § 9607(a) in the response to a 'release' or 'threatened release'; (2) that the response was 'consistent with the national contingency plan'; (3) that the defendant was a person liable for response costs under § 9607(a)(1)-(4);

. . . and [(4)] that the costs incurred by the plaintiff were 'necessary' to the response."[5] *Crofton Ventures Ltd. P'ship v. G & H P'ship*, 258 F.3d 292, 297 (4th Cir. 2001) (quoting 42 U.S.C. § 9607(a)); *see* 42 U.S.C. § 9613(f). The district court's relevant rulings implicate the third element, liability.

Arranger liability provides one method by which a plaintiff can satisfy the third element. This requires the plaintiff to show that the defendant is "a[] person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3).

Here, the 68th Street Group attempted to establish arranger liability by alleging that "[e]ach Defendant is a potentially responsible party . . . that generated materials containing hazardous substances and contracted with a transporter with the intent to dispose of its waste" and then alleging specific instances in which each Defendant contracted with the Superfund Alternative Site's operator to dispose of waste at the Superfund Alternative Site. J.A. 452.

---

[5] Additional requirements apply for some CERCLA claims not based on arranger liability. *See, e.g.*, *Crofton Ventures*, 258 F.3d at 297 (stating that "if [a defendant is] asserted to be a person covered by" § 9607(a)(2), the plaintiff must also show that the defendant "was an owner or operator of a facility or site at the time that the hazardous waste was dumped at the site or when it leaked into the environment there").

13

The district court found those allegations insufficient, reasoning that the 68th Street Group was required to—but did not—allege the Appellees had knowledge that they were disposing of hazardous materials. *68th St.*, 2022 WL 227966, at *3–4. The 68th Street Group now challenges the district court's application of that knowledge requirement in its orders denying the motion for leave to amend and granting the motion for judgment on the pleadings.

So, to resolve this appeal, we must determine whether the phrase "arranged for disposal . . . of hazardous substances" in CERCLA's arranger-liability provision, 42 U.S.C. § 9607(a)(3), requires that a defendant *knew or should have known* that the waste for which it arranged disposal was hazardous. Our review of that issue is de novo. *See McAdams v. Robinson*, 26 F.4th 149, 155 (4th Cir. 2022) (statutory interpretation); *see also In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (denial of motion for leave to amend based on futility for failure to state a claim); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (decision granting motion for judgment on the pleadings).

## A.

We begin our inquiry with the text of the arranger-liability provision. As mentioned above, a plaintiff can establish arranger liability by showing that a defendant "arranged for disposal . . . of hazardous substances." 42 U.S.C. § 9607(a)(3). The Appellees argue that this text requires both the intent to dispose and the specific intent to dispose *of a hazardous substance*. We disagree.

14

Because "the word 'arrange' implies action directed to a specific purpose," *Burlington Northern*, 556 U.S. at 611, the arranger-liability provision is susceptible to two possible readings. The provision could be read to require intent to dispose of waste, or it could be read to require both intent to dispose of waste and the knowledge that the waste is hazardous. While, as discussed in greater detail below, both Supreme Court and circuit-court cases have addressed intent to dispose, *e.g.*, *id.*, whether § 9607(a)(3) also imposes a knowledge requirement is an issue of first impression for the appellate courts.[6]

We ordinarily interpret CERCLA as imposing strict liability. *See Monsanto*, 858 F.2d at 167. In the few limited places where Congress has disrupted that baseline by imposing a knowledge requirement, it has done so quite explicitly.

For example, CERCLA contains an innocent landowner defense that exempts the purchaser of a contaminated property from liability if "[a]t the time the defendant acquired the facility the defendant did not *know* and had no reason to *know* that any hazardous substance" was disposed of there.[7] 42 U.S.C. § 9601(35)(A)(i) (emphasis added); *see*

---

[6] Several district courts have, however, divided over the issue. *See City of Lincoln v. County of Placer*, 668 F. Supp. 3d 1079, 1101 (E.D. Cal. 2023) (collecting cases).

[7] Defendants claim that the 68th Street Group forfeited the ability to reference CERCLA's innocent landowner defense, knowledge requirements in other portions of CERCLA, and CERCLA's municipal-solid-waste exemption by failing to raise them below. In general, a party forfeits an issue if it fails to raise it before the district court. *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020). However, we have held that variations on arguments are permitted if the appealing party "asked both courts to evaluate the same fundamental question." *United States v. Boyd*, 5 F.4th 550, 556 (4th Cir. 2021) (quoting *In Re Under Seal*, 749 F.3d 276, 288 (4th Cir. 2014)). Similarly, the Supreme Court has held that raising new "arguments" on appeal is permitted, so long as the "claim" they support was raised below. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). The arguments

*Monsanto*, 858 F.2d at 166–67. Similarly, when Congress wanted to impose additional penalties for "willful misconduct," "willful negligence," or the violation of an applicable safety regulation, it conditioned the additional penalties on the defendant's "knowledge." 42 U.S.C. § 9607(c)(2)(A).

Had Congress intended to include a knowledge requirement as part of arranger liability, it easily could have done so by imposing liability on a party who, for example, "arranged for disposal . . . of a substance it knew or should have known was hazardous." But Congress did not do so.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (quoting *Bates v. United States*, 522 U.S. 23, 29–30 (1997)). Because—unlike other provisions of CERCLA—§ 9607(a)(3) lacks clear language to suggest that it requires knowledge of hazardousness in addition to intent to dispose, we apply the baseline rule that defendants are strictly liable under CERCLA even if they were unaware that they were disposing of (or arranging to dispose of) a hazardous substance.

The district court's contrary interpretation conflicts with this Court's exhortation to "be[] careful not to vitiate what was intended as remedial legislation by erecting barrier

---

Defendants challenge as forfeited simply provide additional reasoning in support of the 68th Street Group's central claim that arranger liability does not require knowledge of hazardousness. Accordingly, the 68th Street Group did not forfeit the arguments by failing to raise them below.

16

upon barrier on the road to reimbursement of response costs." *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 846 (4th Cir. 1992). Congress enacted CERCLA with two main goals: "(1) to ensure the prompt and effective cleanup of waste disposal sites, and (2) to assure that parties responsible for hazardous substances bear the cost of remedying the conditions they created." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 968 (9th Cir. 2013) (cleaned up); *see also Burlington Northern*, 556 U.S. at 602.

CERCLA achieves its goals by imposing liability for the release of hazardous substances with no minimum threshold and holding potentially responsible parties strictly liable for cleanup costs. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2nd Cir. 1993); *Kalamazoo River*, 228 F.3d at 658. Further, CERCLA's authorization of contribution actions functions to encourage potentially responsible parties to voluntarily initiate remediation efforts rather than drag out litigation over their liability. *See* 42 U.S.C. § 9613(f)(3)(B); *Kalamazoo River*, 228 F.3d at 657. Requiring knowledge of hazardousness on the part of arrangers would undermine these goals by creating significant evidentiary issues and encouraging protracted litigation because a defendant might avoid all liability if it could create enough doubt about the state of mind of its employees decades earlier.

In sum, to sufficiently claim arranger liability, a plaintiff must allege that a defendant intended to dispose of waste and that the waste was in fact hazardous. But a plaintiff need not allege that a defendant knew its waste was hazardous.

17

B.

The Appellees offer several arguments for why we should adopt the district court's interpretation. None are persuasive.

i.

First, the Appellees argue that the Supreme Court read a knowledge requirement into § 9607(a)(3) when it issued its opinion in *Burlington Northern & Santa Fe Railway Co. v. United States*. But that reading of *Burlington Northern* is mistaken.

At issue in *Burlington Northern* was whether Shell Oil Company "arranged for disposal" of chemicals when it shipped the chemicals to customers in a commercial sale and knew the method of shipping would inevitably result in spills during delivery. *Burlington Northern*, 556 U.S. at 602–04, 608. The government sought to hold Shell liable for the spills, claiming that even though Shell's intent was to sell the chemicals, its knowledge of the spills meant that it had arranged for the disposal of a portion of the chemicals and therefore could be held liable as an arranger under CERCLA. *Id.* at 605–08. Ultimately, the Court held that Shell was not liable because Shell lacked the requisite intent to arrange for disposal. *Id.* at 608.

In its analysis, the Court explained that there is a spectrum of cases in which a party might allege arranger liability. On one end of the spectrum, "[i]t is plain from the language of the statute that CERCLA liability would attach . . . if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance." *Id.* at 609–10. On the other end of the spectrum, "[i]t is similarly clear that an entity could not be held liable as an arranger merely for selling a new and useful product if

18

the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." *Id.* at 610.

Between those "two extremes," the Court held, "an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Id.* at 610–11. In explaining that statement, the Court narrowly focused on whether there was intent to dispose, not whether there was knowledge that the disposed-of substance was hazardous. For example, it discussed how "the word 'arrange' implies action directed to a specific purpose" and how "the determination whether an entity is an arranger requires a fact-intensive inquiry" into the nature of the transaction as either a sale or a disposal. *Id.* at 610–11. Later, when the Court stated that a plaintiff must allege "intentional steps to dispose of a hazardous substance," it cited circuit-court cases that similarly focused on the best interpretation of the phrase "[o]therwise arranged." *Id.* at 611 (first citing *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir. 1993); and then citing *United States v. Cello-Foil Prods., Inc.*, 100 F.3d 1227, 1231 (6th Cir. 1996)); *see also Amcast Indus. Corp.*, 2 F.3d at 751 (stating that "the critical words for present purposes are 'arranged for'"); *Cello-Foil*, 100 F.3d at 1233 ("By leaving amounts of solvents in drums ranging from one-half to ten gallons, which Defendants knew [another company] would carry away, a trier of fact could infer that Defendants were taking affirmative acts to dispose.").

Indeed, all the Court's discussion of knowledge and intent focused on whether Shell "arranged for disposal" of the chemicals. The opinion included no in-depth discussion of whether Shell's chemicals were hazardous, and only mentioned "knowledge" in its discussion of whether Shell's awareness that its products would spill during delivery was

19

sufficient to show that it "planned for" disposal. *Burlington Northern*, 556 U.S. at 612 ("While it is true that in some instances an entity's *knowledge that its product will be leaked, spilled, dumped, or otherwise discarded* may provide evidence of the entity's intent to dispose of its hazardous wastes, *knowledge* alone is insufficient to prove that an entity *'planned for' the disposal*[.]" (emphasis added)); *see also id.* at 613 (mentioning "Shell's mere knowledge that spills and leaks continued to occur").

Rather than employ language focused on hazardousness, the Supreme Court varied its language throughout the opinion, sometimes referring to a "hazardous substance" and other times merely referring to a "dispose[d] . . . waste product." *Id.* at 611–12; *see also id.* at 612 ("In order to qualify as an arranger, Shell must have entered into the sale of [the chemical] with the intention that at least a portion of the product be disposed of[.]").

That the Court answered only the narrow question of whether arranger liability requires intent to dispose is unsurprising. The parties in *Burlington Northern* did not dispute that Shell's chemicals were hazardous, nor did they suggest that CERCLA required knowledge of hazardousness. *See id.* at 603. And the Court expressly limited its "grant[ of] certiorari to determin[ing] whether Shell was properly held liable as an entity that had '*arranged for disposal*' of hazardous substances within the meaning of § 9607(a)(3)." *Id.* at 608 (emphasis added); *see also* Petition for Writ of Certiorari at *i, *Shell Oil Co. v. United States*, 556 U.S. 599 (2009) (No. 07-1607), 2008 WL 2549995 (stating the question presented as "[w]hether liability for 'arranging' for disposal of hazardous substances under [CERCLA] may be imposed upon a manufacturer who merely sells and ships, by common

20

carrier, a commercially useful product, transferring ownership and control to a purchaser who then causes contamination involving that product").

Because the Supreme Court was not asked to decide the issue presented in this case and provided no clear indication that it intended to decide the issue, we conclude *Burlington Northern* does not dictate the outcome here.[8]

ii.

Second, the Appellees argue that the sole goal of arranger liability is to prevent entities from contracting around CERCLA, and that imposing liability here would fail to serve the statute's goals because the 68th Street Group has not alleged that Appellees attempted to circumvent CERCLA liability. *Cf. Team Enters., LLC v. W. Inv. Real Est. Tr.*, 647 F.3d 901, 907 (9th Cir. 2011) (recognizing goal of preventing an end-run through contract). But that argument would have us ignore CERCLA's text and fails to recognize that while arranger liability does help deter efforts to evade other forms of CERCLA liability, that is not the provision's *only* goal.

---

[8] Likewise, no circuit court has decided a case in which intent to dispose was clear but the defendant suggested that arranger liability did not attach because they lacked knowledge that the disposed-of substance was hazardous. Rather, circuit-court cases dealing with arranger liability, including this Court's decision in *Consolidation Coal Co. v. Georgia Power Co.*, have uniformly assumed a substance was hazardous without looking to the alleged arranger's knowledge. *See, e.g.*, *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 686, 706 (7th Cir. 2014) (discussing whether the "sale" of "a highly toxic pollutant" "might also qualify as 'arranging for disposal'"); *Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 532 (5th Cir. 2010) ("This appeal concerns only . . . whether [the defendant] 'arranged for disposal' of methanol, which the parties agree is a 'hazardous substance.'"); *Consolidation Coal Co. v. Ga. Power Co.*, 781 F.3d 129, 149 (4th Cir. 2015) (similar).

21

In essence, arranger liability serves, rather than supplants, CERCLA's two overarching goals of ensuring prompt cleanup and requiring parties responsible for hazardous substances to internalize the costs associated with disposal of their waste. "In other words, a person cannot avoid liability by cleverly contracting, but an attempt to contract away liability is not the only way to be liable under [§ 9607(a)(3)]." *City of Lincoln v. County of Placer*, 668 F. Supp. 3d 1079, 1100 (E.D. Cal. 2023). Because our interpretation aligns with those broader purposes, it is of no concern that the 68th Street Group has not alleged that the Appellees attempted to circumvent CERCLA liability.

iii.

Third, the Appellees argue that permitting arranger liability without a knowledge requirement would impose too harsh a result on businesses for ordinary waste disposal. And they similarly echo the district court's concern that it would be unfair to hold a business liable for arranging for the disposal of waste that it did not know was hazardous when Shell was not held liable in *Burlington Northern* even though its knowledge of the potential for spills meant that it was "more culpable" than the Appellees are. *68th St.*, 2021 WL 4255030, at *22 (quoting *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 423 (E.D.N.Y. 2017)). Those arguments amount to policy objections to the choices Congress made as it developed CERCLA's strict-liability regime.

When it enacted CERCLA, Congress developed a "calculated balance of broad strict liability and narrow defenses and exemptions." *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 185 (4th Cir. 2013); *see, e.g.*, 42 U.S.C. § 9607(p)(1)(B) (establishing an exception for certain generators of municipal solid waste). Where

22

Congress chose not to create a defense or exemption from the strict-liability regime, we must conclude that it did so deliberately in order to serve CERCLA's broad remedial goals. While that result may at times seem harsh, that is simply the nature of any strict liability regime. *Cf. In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 897 (5th Cir. 1993) (noting that CERCLA liability is "[o]ften . . . imposed upon entities for conduct predating the enactment of CERCLA, and even for conduct that was not illegal, unethical, or immoral at the time it occurred"); *Ne. Pharm.*, 810 F.2d at 733 (noting that CERCLA's "statutory scheme itself is overwhelmingly remedial and retroactive").

And even if Shell's conduct at issue in *Burlington Northern* was, in a colloquial sense, more culpable than the Appellees' conduct in this case, our role is not to issue moral judgments but instead to apply the statutory scheme that Congress created. In *Burlington Northern*, Shell did not avoid liability because it was not morally culpable; it avoided liability because it had intended to sell, rather than dispose of, its product. *See Burlington Northern*, 556 U.S. at 610. And here, the Appellees' liability turns on whether they intended to dispose of waste and whether the waste was in fact hazardous, not whether they were more or less morally culpable than other businesses.

While the Appellees may have drafted CERCLA differently had they been assigned that task, their policy concerns do not provide a basis on which we may restructure the remedial scheme that Congress has put in place. Because the district court applied an erroneous interpretation of § 9607(a)(3) when it issued its orders denying leave to amend and granting judgment on the pleadings, we vacate those orders and remand for the district court to consider whether the 68th Street Group's Proposed Amended Complaint satisfies

23

the correct standard for arranger liability and whether any of the Appellees' alternative defenses are meritorious.[9]

## IV.

In sum, under CERCLA's arranger-liability provision, a defendant is liable whenever they intentionally arrange for the disposal of a substance and the substance is hazardous. Because the district court required not just intent to dispose but also knowledge that the disposed-of substance was hazardous, we vacate its order denying the 68th Street Group's motion to amend and its order granting the joint motion for judgment on the pleadings and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[9] The Appellees urge us to affirm the district court based on alternative arguments that they presented below and reiterate on appeal. Because the district court has not yet addressed those arguments, we decline to do so at this stage.